**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
AT COVINGTON**

**CIVIL ACTION NO. 26-245-DLB**

**JORGE LUIS RODRIGUEZ SOSA**                                                   **PETITIONER**


**v.**                                    **MEMORANDUM ORDER AND OPINION**


**MARC FIELDS et al.**                                                              **RESPONDENTS**

* * * * * * * * * * * * * * * *

## I.    INTRODUCTION

This matter is before the Court on Jorge Luis Rodriguez Sosa's *pro se* Petition for Writ of Habeas Corpus.  (Doc. # 1).  On June 5, 2026, the Court directed Respondents to respond to the Petition.   (Doc. # 3).   Respondents Tammy Marich, Todd Lyons, Markwayne Mullin, and Todd Blanche (collectively, the "Federal Respondents") filed their Response on June 19, 2026.  (Doc. # 4).  Respondent Marc Fields did not file a response and the time for doing so has passed.  On June 26, 2026, Petitioner filed a "Motion for Immediate Release." (Doc. # 5).  After reviewing this filing, the Court will construe it as a Reply to the Federal Respondents' Response.  Accordingly, this matter is ripe for the Court's review.  For the following reasons, Sosa's Petition (Doc. # 1) is **denied**.

## II.    FACTUAL AND PROCEDURAL BACKGROUND

Sosa is a native and citizen of Cuba.  (Doc. # 1-1 at 1).  It is unclear when Sosa first entered the United States.  However, there is no question that on July 15, 2024, an Immigration Judge ("IJ") ordered Sosa removed.  (Doc. # 4-1 at 17).  Although Sosa initially appealed this order of removal to the Board of Immigration Appeals ("BIA"), he

1

moved to withdraw his appeal on April 22, 2026.  (Doc. # 1-1 at 1).  The BIA granted this motion on May 13, 2026.  (Doc. # 4 at 2).  Although the Department of Homeland Security ("DHS") is unable to remove Sosa to his native Cuba, DHS has arranged for Sosa's removal to Mexico.  (*Id.*).  Pursuant to an agreement between the United States and Mexico, Mexico will accept Cuban nationals provided they are fully compliant with their removal.  (*Id.*).  On June 8, 2026, DHS served Sosa with a Notice of Removal to Mexico, but Sosa refused to sign this document.  (*Id.*).  By virtue of his refusal to sign his Notice of Removal, Mexico does not consider Sosa fully compliant and, consequently, will not accept him.  (*Id.*).

On October 20, 2025, while his appeal was pending before the BIA, Sosa was arrested in Louisville, Kentucky for driving under the influence and domestic violence. (*Id.*).  Three days later, the Louisville Department of Corrections released Sosa into the custody of Immigration and Customs Enforcement ("ICE").  (Doc. # 4-2 at 2).  Sosa remains in ICE custody, and he is detained at the Kenton County Jail in Covington, Kentucky.  (Doc. # 1 at 1).

On June 4, 2026, Sosa filed the instant Petition for Writ of Habeas Corpus requesting that the Court order his immediate release.  (Doc. # 1).  The Federal Respondents having filed their Response (Doc. # 4) and Sosa having filed what the Court construes as his Reply (Doc. # 5), this matter is ripe for the Court's review.

III.    ANALYSIS

Sosa claims that he has been subjected to unreasonably prolonged detention by ICE. (Doc. # 1-1 at 2-3).  Specifically, Sosa argues that because he is no longer appealing his order of removal, the Federal Respondents "do[] not have a valid excuse for his

detainment." (*Id.* at 1). And Sosa notes that he has been in ICE custody since October 23, 2025, a timeline which exceeds the six-month window during which detention is presumptively reasonable. (Doc. # 5 at 1-2 (citing *Zadvydas v. Davis*, 533 U.S. 678, 701 (2001))). Sosa asserts that DHS's proposal to remove him to Mexico is unlawful "because it violates [a] noncitizen's right to seek fear-based relief under the [C]onvention [Against Torture] (CAT)." (*Id.* at 2). As a result, Sosa claims that "ICE has made no attempt to show it has a plan in place to lawfully remove the Petitioner." (*Id.*).

The Federal Respondents, on the other hand, argue that Sosa is detained because he is subject to a final order of removal. (Doc. # 4 at 3). When an order of removal becomes final, the government has a ninety-day "removal period" to effect removal. (*Id.* (citing 8 U.S.C. § 1231(a)(2)(A))). However, detention may extend beyond the removal period, the Federal Respondents continue, where an alien "fail[s] to cooperate with his removal." (*Id.* (citing 8 U.S.C. § 1231(a)(1)(C))). If an alien refuses to take the steps necessary to bring about his removal, the removal period may be "extended beyond a period of 90 days and the alien may remain in detention during such extended period[.]" 8 U.S.C. § 1231(a)(1)(C). The Federal Respondents note that Sosa's refusal to cooperate is the sole obstacle to his removal. (Doc. # 4 at 8). Although the Sixth Circuit "has not had occasion to review this particular situation," the Federal Respondents note that at least three other Circuit Courts have held that § 1231(a)(1)(C) mandates detention when an alien's refusal to cooperate is the sole barrier to removal. (*Id.* at 4-7 (citing *Pelich v. I.N.S.*, 329 F.3d 1057 (9th Cir. 2003); *Oladokun v. U.S. Atty. Gen.*, 479 F. App'x 895 (11th Cir. 2012); and *Mytyuk v. Young*, 347 F. App'x 50 (5th Cir. 2009))). So, the Federal

3

Respondents conclude that Sosa's removal period is still in effect and his detention is mandatory.  (*Id.* at 8).

Whatever the merits of the Federal Respondents' argument, Sosa's detention is lawful for a separate reason: the initial ninety-day removal period has not elapsed.

There is no dispute that, because he has been ordered removed, Sosa is detained under 8 U.S.C. § 1231.  And § 1231 states that during the ninety-day removal period, an alien must be detained.  8 U.S.C. § 1231(a)(2)(A).  The removal period begins on the latest of: (1) the date the order of removal becomes administratively final, (2) if the removal order is judicially reviewed and a court stays the alien's removal, the date of the court's final order, or (3) if the alien is detained in a non-immigration context, the date the alien is released from detention or confinement.  8 U.S.C. § 1231(a)(1)(B).  Relatedly, "[a]n order of removal becomes final at the earlier of two points: (1) 'a determination by the BIA affirming such order,' or (2) 'the expiration of the period in which the alien is permitted to' petition the BIA for review of the order."  *Riley v. Bondi*, 606 U.S. 259, 260 (2025) (quoting 8 U.S.C. § 1101(a)(47)(B)).

Sosa's detention is lawful because he is still in the ninety-day removal period during which detention is mandatory.  Although Sosa was originally ordered removed on July 15, 2024, he filed a timely appeal.  (*See* Doc. # 4-4 at 1).  By filing this appeal, Sosa prevented his removal order from becoming "administratively final" as contemplated by § 1231.  Indeed, Sosa's removal order was not "administratively final" as long as he had an appeal pending before the BIA.  However, Sosa moved to withdraw his appeal, and the BIA granted his motion on May 13, 2026.  (Doc. # 4-4).  Thus, although it has been nearly two years since Sosa was ordered removed, he did not become subject to a final,

4

executable order of removal until May 13, 2026.  *See Phadael v. Ripa*, No. 24-cv-22227-ALTMAN, 2024 WL 3088350, at *3 (S.D. Fla. June 21, 2024) ("Phadael's removal order became final on April 15, 2024—the day the BIA granted Phadael's motion to withdraw his appeal and held that the immigration judge's order was final."); *Garay-Mercado v. Castro*, No. 2:26-cv-01119-MIS-KK, 2026 WL 1162752, at *3 (D.N.M. Apr. 29, 2026) ("Once the BIA processes the withdrawal [of appeal], the Removal Order will become final, and Petitioner's detention will be mandatory.") (cleaned up).  Consequently, Sosa's removal period began on May 13, 2026, and will not expire until August 11, 2026.  (*See* Doc. # 4-7 at 1).  During this period, the Immigration and Nationality Act mandates Sosa's detention.  *Martinez v. Larose*, 968 F.3d 555, 560 (6th Cir. 2020) (noting that "§ 1231(a)(2) provides for mandatory detention of the alien during the 90-day removal period").

Sosa himself acknowledges that "[w]hen a noncitizen's removal order becomes final, like here, the government has 90 days to effectuate removal . . . During that period, detention is mandatory."  (Doc. # 5 at 1).  Because Sosa's removal order did not become final until May 13, 2026, when the BIA granted his motion to withdraw his appeal, the government has until August 11, 2026 to effectuate his removal.   The Federal Respondents argue—and many courts have held—that an alien's refusal to cooperate in the removal process constructively extends the removal period beyond ninety days.  *See, e.g. Pelich*, 329 F.3d at 1061 (holding that a non-cooperative detainee "cannot legitimately object to his continued detention when that very detention is caused by his own conduct").  However, this Court need not address that argument to resolve Sosa's claims.  The fact that ninety days have not passed since Sosa's removal order became final means that his detention is not only lawful, but mandatory.  Sosa has failed to

demonstrate that he is entitled to habeas relief. *See Caver v. Straub*, 349 F.3d 340, 351 (6th Cir. 2003) ("We are also mindful that in a habeas proceeding the petitioner has the burden of establishing his right to federal habeas relief and of proving all facts necessary to show a constitutional violation.") (internal quotation omitted). As a result, his Petition (Doc. # 1) must be **denied**.

## IV.    CONCLUSION

Accordingly, for the reasons set forth herein, **IT IS ORDERED** as follows:

(1)    Petitioner's Petition for Writ of Habeas Corpus (Doc. # 1) is **DENIED**;

(2)    Petitioner's motion for immediate release (Doc # 5) is **DENIED**; and

(3)    This matter is **DISMISSED** and **STRICKEN** from the Court's active docket.

This 6th day of July, 2026.



Signed By:

*David L. Bunning*

Chief United States District Judge

6